IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPHINE H. SPAULDING,           :
et al.,
                                  :
    Plaintiff,
                                  :
v.                                    Civil Action No. GLR-11-2733
                                  :
WELLS FARGO BANK, N.A.,
                                  :
    Defendant.
                                  :

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiffs Josephine H. Spaulding and Dale E. Haylett, Jr.'s ("Plaintiffs") Motion for Leave to File Supplemental Authority (ECF No. 12) and Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss (ECF No. 10). This case involves Wells Fargo's denial of Plaintiffs' mortgage loan modification application. Plaintiffs' Complaint alleges breach of implied-in-fact contract (Count I), negligence (Count II), violations of the Maryland Consumer Protection Act (Count III), negligent misrepresentation (Count IV), and common law fraud (Count V). The issues have been comprehensively briefed therefore no oral argument is required. See Local Rule 105.6 (D.Md. 2011).

Despite the Opposition, the Court GRANTS Plaintiffs' Motion for Leave to File Supplemental Authority and considers the

arguments therein.   Further, for the reasons that follow, the Court GRANTS Wells Fargo's Motion to Dismiss.

## I.   BACKGROUND[1]

Plaintiffs have owned and resided in their home, located in Glenelg, Maryland, since March 1997.   In January 2006, Plaintiffs refinanced their original mortgage through Fremont Investment & Loan who later assigned servicing rights to Wells Fargo.

On February 24, 2010, Plaintiffs submitted an application for a loan modification under the Home Affordable Modification Program ("HAMP").[2]   Specifically, Plaintiffs' application sought entry into a Trial Period Plan ("TPP" or "TPP Agreement"),

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and are viewed in a light most favorable to Plaintiffs.

[2] The HAMP Program is a product of the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 *et seq.*, and codified in 12 U.S.C. §§ 5219, 5219a, 1715z-23.   HAMP delegates authority to the U.S. Department of Treasury to provide financial incentives to banks, in return for the banks' agreement to help struggling homeowners circumvent foreclosure by reducing the monthly mortgage payments of eligible applicants to no more than 31% of their gross monthly income.   Wells Fargo is a voluntary HAMP participant, which means it is obligated to issue a loan modification to borrowers who meet certain conditions. The HAMP application involves a two-step process.   First, the mortgage servicer determines whether the borrower is eligible for HAMP and, if eligible, the borrower enters into a Trial Period Plan ("TPP") for the duration of three months.   Under the TPP, the borrower is required to make reduced monthly mortgage payments in a timely manner and satisfy any other requirements set forth in the TPP Agreement.   Second, borrowers who successfully satisfy the aforementioned requirements are offered a permanent loan modification.

which, if accepted, would have permitted Plaintiffs to make reduced monthly mortgage payments for a trial period of three months.

Plaintiffs' application consisted of a financial worksheet, proof of income, and hardship explanation. Plaintiffs' proof of income consisted of (1) two of Mr. Haylett's earning statements, dated February 12 and February 19 respectively, (2) Ms. Spaulding's disability letter, and (3) a lease agreement between Ms. Spaulding and her tenant. According to Plaintiffs, the application illustrated their eligibility for the HAMP program and, as a result, Wells Fargo was required to issue a TPP reducing Plaintiffs' monthly mortgage payment.

In a letter dated March 1, 2010, however, Wells Fargo requested additional proof of income from Plaintiffs. The letter specifically asked Plaintiffs to submit two additional earning statements for Mr. Haylett reflecting pay-dates either after February 19, before February 12, or one of each. Moreover, the letter stated that if Plaintiffs failed to provide the requested information, or request an extension, within ten days, the modification request would be considered cancelled.[3] Plaintiffs submitted the additional proof of income on March 22,

---

[3] The letter also stated, "[p]lease note any collection and foreclosure action will continue uninterrupted until approval. Therefore, a timely response is essential." (Compl. Ex. 5, at 1, ECF No. 2-5).

2010, eleven days in excess of the ten-day deadline established in the March 1 letter.  Plaintiffs do not allege they requested an extension of the deadline prior to the cancellation.  On April 5, 2010, Wells Fargo sent a notice to Plaintiffs informing them that their mortgage loan was two months delinquent beginning with the March 1 payment.

Thereafter, Wells Fargo sent Plaintiffs a second HAMP introduction letter and application packet on July 2, 2010.  On July 6, Wells Fargo sent Plaintiffs a second delinquency notice and thereafter, on July 18, a foreclosure notice.   On August 11, 2010, Wells Fargo mailed Plaintiffs a denial of their HAMP application, citing Plaintiffs' failure to provide the requested documents.  According to Plaintiffs, upon receipt of the denial letter, they repeatedly applied for the HAMP modification, only to have Wells Fargo continually deny their requests.  Plaintiffs received a second foreclosure notice on September 5, 2010.

On July 25, 2011, Plaintiffs filed this action in the Circuit Court for Howard County, Maryland, alleging breach of implied-in-fact contract (Count I), negligence (Count II), violations of the Maryland Consumer Protection Act (Count III), negligent misrepresentation (Count IV), and common law fraud (Count V).  Wells Fargo removed this action to this Court on September 22, 2011, based on diversity jurisdiction, and filed a

Motion to Dismiss on September 29. Plaintiffs oppose the Motion.

## II.  STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007) (internal citations omitted); see Fed.R.Civ.P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted)(quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Id.; Twombly, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995).  Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. Twombly, 550 U.S. at 556 n.3.

### III. DISCUSSION

Wells Fargo moves for dismissal of Plaintiffs' claims, citing Plaintiffs' inability to assert a private right of action for the denial of a HAMP TPP.  For the reasons that follow, the

Court will dismiss Plaintiffs' Complaint in its entirety.

## A.   Wells Fargo's Motion to Dismiss

Wells Fargo argues, and the Court agrees, that Plaintiffs' Complaint should be dismissed in its entirety because there is no private right of action for the denial of a HAMP application. (Def.'s Mot. to Dismiss 4-7).

Plaintiffs argue, however, that the Complaint cites to violations of the HAMP guidelines as evidence of actionable misconduct as opposed to advocating for a private right of action. (Pls.' Resp. to Def.'s Mot. to Dismiss 2-3). The Court disagrees. Plaintiffs' entire Complaint arises out of an alleged failure to follow the HAMP guidelines.

The applicable case law is clear that, absent a TPP Agreement, a suit that seeks the general enforcement of the HAMP guidelines must fail. See, e.g., Ramos v. Bank of Am., N.A., No. DKC-11-3022, 2012 WL 1999867, at *3 (D.Md. June 4, 2012)("By disregarding the allegation that a TPP exists and seeking a preliminary loan modification, these claims are, in effect, attempting to enforce the HAMP guidelines. They must therefore be dismissed because there is no private right of action to enforce HAMP."); Coulibaly v. J.P. Morgan Chase Bank, N.A., No. DKC-10-3517, 2011 WL 3476994, at *15 (D.Md. Aug. 8, 2011)("Nor can Plaintiffs recast their claim as a breach of contract claim based on a third-party beneficiary theory . . . In Astra, the

Court emphasized that breach of contract actions should not be used to create constructive private rights of action where none otherwise exist.")(citing Astra USA, Inc. v. Santa Clara Cnty., Cal., 131 S.Ct. 1342, 1348 (2011)); Allen v. CitiMortgage, Inc., No. CCB-10-2740, 2011 WL 3425665, at *4 (D.Md. Aug. 4, 2011) ("Numerous courts have held that borrowers do not have an express or implied private right of action under HAMP.")(citation omitted).

Conversely, the enforcement of a standing TPP Agreement may give rise to a private right of action because the agreement establishes privity of contract between the parties. See, e.g., Ramos, 2012 WL 1999867, at *3 ("Courts in this district have held, however, that separate and apart from HAMP, enforcement of the TPP, if one exists, may give rise to a private right of action."); Allen, 2011 WL 3425665, at *5 ("[E]ven if a private right of action does not exist under HAMP, the [plaintiffs] may be permitted to assert a breach of contract claim stemming from the TPP Agreement as long as they have stated a proper claim in their amended complaint.").

Here, the foundation of Plaintiffs' claims is Wells Fargo's denial of their HAMP application.  Plaintiffs do not allege that a TPP Agreement was in place or even that it was offered.  The Complaint, rather, merely alleges Plaintiffs were potentially entitled to a TPP because they were eligible under the HAMP

guidelines. Plaintiffs' claims, therefore, cannot survive a motion to dismiss. Moreover, the TPP eligibility conditions were not met as a result of Plaintiffs' undisputed failure to submit the requested additional information prior to the cancellation deadline. Nonetheless, this Court will address each of Plaintiffs' counts below.

**1.   <u>Breach of Implied-In-Fact Contract (Count I)</u>**

Plaintiffs allege Wells Fargo's denial of their TPP application constitutes breach of an implied-in-fact contract. Specifically, Plaintiffs allege an implied-in-fact contract existed between them and Wells Fargo by virtue of the Plaintiffs, as eligible borrowers, completing a HAMP application that Wells Fargo "received and purported to process and determine." (Pls.' Resp. to Def.'s Mot. to Dismiss 6-7). Plaintiffs cite <u>Wigod v. Wells Fargo Bank, N.A.</u>, 673 F.3d 547 (7th Cir. 2012) and <u>Allen</u>, 2011 WL 3425665, to support their assertion that claims arising from a bank's HAMP violations may serve as a viable cause of action. (Pls.' Mot. for Leave to File Supplemental Authority ["Pls.' Mot."] ¶¶ 2-3). Specifically, Plaintiffs argue that the <u>Allen</u> decision is supportive because the Court allowed "claims for breach of contract, promissory estoppel, and violations of the Maryland Consumer Protection Act to proceed, even though they arose from the mortgage servicer's HAMP violations." (Pls.' Mot. ¶ 6).

Wells Fargo argues that Plaintiffs' breach of implied-in-fact contract claim must fail because it is merely a re-characterization of a HAMP-based claim, which has been summarily rejected by the courts. (Def.'s Mot. to Dismiss 7-8).  As stated above, this Court has made it clear that, absent a TPP Agreement, a suit that seeks the general enforcement of the HAMP guidelines must be dismissed.  <u>See, e.g.</u>, <u>Ramos</u>, 2012 WL 1999867, at *3; <u>Coulibaly</u>, 2011 WL 3476994, at *15; <u>Allen</u>, 2011 WL 3425665, at *4.  In the preceding district court cases and <u>Wigod</u>, the plaintiffs' claims were able to proceed on the basis of a previously established TPP Agreement. <u>See, e.g.</u>, <u>Wigod</u>, 673 F.3d at 558-59; <u>Allen</u>, 2011 WL 3425665, at *2.

In the case <i>sub judice</i>, Plaintiffs contend that because Wells Fargo agreed to participate in HAMP, it "made an implied in fact offer to plaintiffs . . . to provide a TPP . . . in return for plaintiffs . . . taking the time to submit a HAMP application." (Compl. ¶ 45).  Plaintiffs further contend their submission of the HAMP application constituted an acceptance of Wells Fargo's offer, thereby forming "a valid and enforceable implied in fact contract supported by consideration that was separate from the consideration for the underlying mortgage contract." (Compl. ¶¶ 46-47).  According to Plaintiffs, Wells Fargo breached this implied-in-fact contract by failing to provide a TPP.  (Compl. ¶ 48).

10

The Court finds that no contract, either express or
implied, exists between Plaintiffs and Wells Fargo.  Plaintiffs'
participation in the TPP was only possible if certain conditions
were met.   Plaintiff did not meet those conditions, which
resulted in the cancellation of the offer to be considered.

Accordingly, Wells Fargo's Motion to Dismiss is granted as
to Count I.

**2.   Negligence and Negligent Misrepresentation (Counts II & IV)**

Counts II (negligence) and IV (negligent misrepresentation)
of Plaintiffs' Complaint must fail because Wells Fargo did not
owe Plaintiffs a tort duty.  In Maryland, causes of action based
on negligence or negligent misrepresentation require the
plaintiff to prove a duty owed to them.  Jacques v. First Nat'l
Bank of Maryland, 515 A.2d 756, 758 (Md. 1986).  Plaintiffs
cannot, therefore, allege actionable claims of negligence and
negligent misrepresentation without first demonstrating Wells
Fargo owed them a duty in tort.  Id. ("Absent a duty of care
there can be no liability in negligence.")(citations omitted);
Parker v. Columbia Bank, 604 A.2d 521, 531 (Md.Ct.Spec.App.
1992)("In order to state a cause of action as to . . . negligent
misrepresentation, [and] negligence . . . the [plaintiffs] must
demonstrate a duty owed to them by [the defendants].")(citations
omitted).

11

It is well established in Maryland that the relationship between the bank and borrower is contractual, not fiduciary, in nature. <u>Yousef v. Trustbank Sav., F.S.B.</u>, 568 A.2d 1134, 1138 (Md.Ct.Spec.App. 1990). Moreover, "[t]he mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." <u>Jacques</u>, 515 A.2d at 759. In cases involving economic loss, the imposition of tort liability requires "an intimate nexus between the parties" that is satisfied by "contractual privity or its equivalent." <u>Id.</u> at 759-60. Absent special circumstances, the court is reluctant to "transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." <u>Parker</u>, 604 A.2d at 532 (citations omitted).

For both the negligence and negligent misrepresentation claims, Plaintiffs allege Wells Fargo owed them a tort duty that arose through shared contractual privity by virtue of their mortgage contract. Plaintiffs contend this contractual privity created the "legally requisite 'intimate nexus'" between the parties. (Compl. ¶¶ 52, 67). Moreover, on the negligence claim, Plaintiffs allege that a breach of the tort duty occurred when Wells Fargo denied their HAMP application and lost their

12

paperwork.   (Compl. ¶ 54).   Relying upon the seminal case of
Jacques, Plantiffs argue that Wells Fargo owed them a duty of
reasonable care in the processing and determination of their
HAMP application.   (Pls.' Resp. to Def.'s Mot. to Dismiss 3, 8-
9).

Wells Fargo argues that, assuming Plaintiffs allegations
are legally and factually true, the Plaintiffs failed to
identify a duty arising from the mortgage contract that was
negligently breached by Wells Fargo.   (Def.'s Mot. to Dismiss 8-
9).   Moreover, Wells Fargo avers that Jacques cannot be extended
to this case because there was no promise or consideration
exchanged between the parties regarding Plaintiffs' HAMP
application.   (Def.'s Resp. to Pls.' Mot. 3-4).

In Jacques, the plaintiff borrowers entered into a
residential sales contract that required them to secure a
$112,000 bank loan at a specified interest rate.   515 A.2d at
756-57.   The borrowers then submitted their sales contract, $144
processing fee, and application to the bank.   Id. at 757. The
bank advised the borrowers that a loan rate of 11 7/8% would be
locked-in for ninety days from the date of the application.   Id.
Less than a month later, the bank informed the borrowers they
only qualified for $74,000 and subsequently reduced the
qualified amount to $41,400 due to a banking error.   Id.   After
failing to secure new financing from another institution, the

borrowers proceeded to settlement with the bank's $41,400 loan, supplementing the deficit with loans from relatives and a personal short term loan from the bank.  Id.  The borrowers sued the bank, alleging, *inter alia*, negligent processing of their loan application.  Id. at 757-58.  The Court of Appeals of Maryland ("Maryland Court") took painstaking care to carve out a narrow exception to the general rule that Maryland does not recognize negligence actions that arise solely out of a contractual relationship.  Jacques, 515 A.2d at 756, 758 ("We granted certiorari to determine whether a bank does owe a duty to its customer under the circumstances *presented by this case*[]" and holding "under the *particular facts of this case* the bank is properly charged with" a tort duty)(emphasis added). The United States Court of Appeals for the Fourth Circuit has interpreted this exception to apply only to vulnerable parties. See Lawyers Title Ins. Corp. v. Rex Title Corp., 282 F.3d 292, 293-94 (4th Cir. 2002).

In its analysis, the Maryland Court engaged in a three-step process to create the aforementioned exception.  First, the court found that a contract existed between the parties because the bank made at least two express promises to process the application and lock-in a specific interest rate in consideration for the borrowers' $144 processing fee.  Id. at 761.  As a result, the bank "obtained a business advantage and

potential benefits sufficient to support its promise." _Id._ (citations omitted). Second, the court found that the contract between the parties contained an implicit agreement to process the application with reasonable care because, among other things, "the [b]ank expressly undertook to process the application, advised its customer of the probable time required for processing, guaranteed a specified rate of interest for a period of ninety days for any loan for which the Jacques might qualify, and entered upon performance." _Id._ at 762. Third, the court found that, under those circumstances, a tort duty should be recognized because the bank had knowledge of the legal obligation the Jacques held under the sales contract when it agreed to process the application, which left the borrowers "vulnerable and dependent upon the [b]ank's exercise of due care." _Id._ at 762-63. Additionally, the court imputed a tort duty because the "banking business is affected with the public interest." _Id._ at 762-64.

Applying the principles and holding of _Jacques_, the Court finds the exception articulated to be inapplicable because, unlike in _Jacques_, the Plaintiffs and Wells Fargo did not enter into any implied or express contract. No tort duty, therefore, could arise as a matter of law. As a result, Plaintiffs fail to state a claim upon which relief may be granted.

Accordingly, Wells Fargo's Motion to Dismiss is granted as

15

to Counts II and IV.

**3.    Violations of the Maryland Consumer Protection Act and Common Law Fraud (Counts III & V)**

Wells Fargo moves to dismiss Counts III (violations of the Maryland Consumer Protection Act) and V (common law fraud) of Plaintiffs' Complaint on the ground that Plaintiffs' exhibits belie their alleged misrepresentations.[4] (Def.'s Mot. to Dismiss 10-13).  Specifically, Wells Fargo contends they never misrepresented that they had not received proof of income, but rather requested additional information by a certain deadline, as illustrated in Plaintiffs' Exhibit 5.  (Id.).

Plaintiffs respond by arguing Wells Fargo's request for additional information constituted a misrepresentation in and of itself.  (Pls.' Resp. to Def.'s Mot. to Dimiss 10-11). Plaintiffs also allege in their Complaint that Wells Fargo made a misrepresentation of material fact "when it represented to the world it would comply with its HAMP obligations when it signed its HAMP contract with the U.S. Treasury."  (Compl. ¶ 62.4).

The Maryland Consumer Protection Act ("MCPA") prohibits the commission of unfair or deceptive trade practices, which include making a "false . . . or misleading oral or written statement . . . or other representation of any kind which has the

---

[4] Wells Fargo also moves to dismiss Count IV (negligent misrepresentation) on this ground, but the Court addressed this count in section A2 *supra*.

capacity, tendency, or effect of deceiving or misleading
consumers." Md. Code Ann., Com. Law § 13-301(1). MCPA claims
that sound in fraud are subject to the heightened pleading
standards of Federal Rule of Civil Procedure 9(b). Haley v.
Corcoran, 659 F.Supp.2d 714, 724 n.10 (D.Md. 2009).

In order to bring a common law fraud claim, a party must
show:

> (1) that the defendant made a false representation;
> (2) that its falsity was either known to the
> defendant, or the misrepresentation was made with such
> reckless indifference to the truth as to be equivalent
> to actual knowledge; (3) that it was made for the
> purpose of defrauding the person claiming to be
> injured thereby; (4) that such person not only relied
> upon the misrepresentation, but had a right to rely
> upon it in the full belief to its truth, and would not
> have done the thing from which the injury had resulted
> had not such misrepresentation been made; and (5) that
> such person actually suffered damage directly
> resulting from such fraudulent misrepresentation.

Parker, 604 A.2d at 527. Plaintiffs fail to satisfy, *inter
alia*, the first element of their common law fraud claim.

The crux of Plaintiffs' MCPA and common law fraud claims is
that Wells Fargo misrepresented its failure to receive
Plaintiffs' proof of income and its right to foreclose because
Plaintiffs submitted the requisite paperwork, which entitled
them to a HAMP modification. (Compl. ¶¶ 62-63). The pleadings,
however, show that Wells Fargo acknowledged receipt of
Plaintiffs' paperwork.

Specifically, Plaintiffs' exhibits illustrate Wells Fargo's

17

receipt of Plaintiffs' proof of income, a time sensitive request for additional information, and a late submission of the requested information. (See Compl. Exs. 5-6). Moreover, Wells Fargo's request for additional information in particular clearly warns "[i]f ALL of this information or a request for an extension is not received within ten (10) days, we will consider this request cancelled. Please note any collection and foreclosure action will continue uninterrupted until approval. Therefore, a timely response is essential." (Compl. Ex. 5, at 1). The clarity of this document does not support Plaintiffs' allegations of the misrepresentations needed to support claims of MCPA violations and common law fraud.

Assuming, *arguendo*, Plaintiffs' claims could proceed, they would fail to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires Plaintiffs to plead "with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). The circumstances include "the time, place, and contents of . . . false representations, as well as the identity of the person making the representation and what he obtained thereby." Allen, 2011 WL 3425665, at *9.

The plaintiffs in Allen satisfied the heightened pleading standards of Rule 9(b) by pleading "the dates and contents of numerous contradictory letters sent by [the lender] that they allege were both misleading and false." Id. Plaintiffs in the

case *sub judice*, however, failed to illustrate any contradiction amongst Wells Fargo's correspondence beyond Plaintiffs' unsubstantiated claim that Wells Fargo misrepresented its receipt of Plaintiffs' paperwork. (<u>See</u> Compl. ¶ 62). Contrary to Plaintiffs' allegations, Wells Fargo acknowledged receipt of Plaintiffs' original proof of income. (<u>See</u> Compl. Ex. 5, at 1). There is, therefore, no misrepresentation to support Plaintiffs' fraud claims.

Accordingly, Wells Fargo's Motion to Dismiss is granted as to Counts III and V.

## IV.   CONCLUSION

For the foregoing reasons, the Court will, by separate Order, GRANT Plaintiffs' Motion for Leave to File Supplemental Authority (ECF No. 12) and Defendant Wells Fargo's Motion to Dismiss (ECF No. 10).

Entered this 23rd day of July, 2012

                                        /s/
                          _____
                          George L. Russell, III
                          United States District Judge